Fred E. Guy, Appellant, *v.* Horace Craighead and Frances Craighead, Respondents.

*Settlement by a husband on his wife — under what circumstances it is good as against his then existing creditors.*

A conveyance executed for a nominal consideration by a husband to his wife as a settlement upon her and his children, of property the value of which was not greater than was reasonably sufficient for that purpose, made at a time when he was perfectly solvent and retained a surplus greatly in excess of all existing and contingent liabilities, which surplus he continued to hold for some time after the execution of the conveyance, is valid as against a creditor of the husband whose claim accrued prior to its execution.

Appeal by the plaintiff, Fred E. Guy, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 22d day of May, 1899, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

*Edward B. Hill*, for the appellant.

*Charles Strauss*, for the respondents.

INGRAHAM, J. :

A former trial of this action resulted in a judgment for the defendants which, upon appeal to this court, was reversed (21 App. Div. 460). The rule which should control in the disposition of this case was then stated as follows : " The conveyance in the case now before us was made by a husband to his wife, and was admittedly without consideration. Such a conveyance cannot be condemned without satisfactory proof of the fraudulent intent referred to in the statute. The rule is aptly expressed in the case of *Kain* v. *Larkin* (131 N. Y. 307) as follows, viz., ' An owner of real estate can make a voluntary settlement thereof upon his wife and children without any consideration, provided he has ample property left to satisfy all the just claims of his creditors. *If the grantor remains solvent after the conveyance and has sufficient property left to satisfy all his just debts*, then the conveyance, *whatever his intention was*, cannot be a fraud upon his existing creditors. * * * But the person assailing the deed assumes the burden of showing that it was executed in bad faith, and that it left the grantor insolvent and without ample property to pay his existing debts and liabilities ; and so it has been repeatedly held.' " And the court, upon the facts that then appeared, held that the proof showed a fraudulent intent, and that the judgment should have been for the plaintiff. Upon the new trial the court found that the conveyance sought to be set aside was made by defendant Horace Craighead as a settlement upon his wife and children, was a reasonable provision for them and was accepted in good faith for a good and lawful consideration and without intent to hinder, delay or defraud any of his creditors, was made at a time when he was perfectly solvent and able to pay all his creditors, including the plaintiff, and that he retained property, both real and personal, sufficient to satisfy all existing and contingent liabilities, and continued to hold such property for some time. If this finding is sustained by the evidence the conclusion of law was correct.

It appeared that in April, 1883, the grantor and his father, Robert Craighead, had executed an agreement whereby they agreed to pay five per cent of the par value of certain stock in a manufacturing company for the term of five years, beginning from the 1st of September, 1883 ; that on August 10, 1892, a claim was made against the defendant individually and as executor of his father's estate for

a sum of over $11,000 under this agreement of 1883; which claim defendant disputed, and he was advised by his counsel that it was invalid; that subsequently, in June, 1893, an action on that claim was commenced by the plaintiff, which, in October, 1895, resulted in a judgment in favor of the plaintiff against the defendant for upwards of $17,000; that Horace Craighead inherited a considerable estate from his father, who died in December, 1891, and that on March 2, 1893, by a bargain and sale deed he conveyed to the defendant Frances Craighead, his wife, in consideration of one dollar, a plot of land in the twenty-fourth ward of the city of New York, subject to a mortgage to the Mutual Life Insurance Company of the city of New York, for $35,000 and interest. This deed was recorded July 6, 1893, and this action was to set aside this deed as fraudulent and void as to creditors. The plaintiff put in evidence a power of attorney executed by the defendant Frances Craighead, appointing the defendant Horace Craighead her true and lawful attorney. The power of attorney was dated April 22, 1892, about one year prior to the execution of the deed sought to be set aside in this action. The plaintiff also offered in evidence a deed of Horace Craighead to Frances Craighead, his wife, of certain property in Westchester county, dated October 21, 1892, and recorded July 8, 1893, and also a conveyance of certain lands in New Jersey for the consideration of $10,000. The evidence of Horace Craighead given upon the former trial of this action was then read by the plaintiff as evidence. The defendant had then testified that, at the time he made this transfer, he was in business in the city of New York manufacturing lamps and metal goods; that he was not indebted to any person or corporation, and did not at that time suppose that he was indebted in any sum whatever to the plaintiff; that outside of the property included in this conveyance he had at that time $25,000 in cash in his own name in the Union Trust Company, subject to his own check or draft; that he had mortgages in his own name amounting to about $25,000 more; that he owned an undivided interest in real estate in New Jersey, the minimum value of which was $10,000 or more; that he owned one-half of the capital of his business, which was $10,000; that he was doing a good and flourishing business at the time of the conveyance; that he was also connected with a company in the State of Massachusetts, draw-

ing a salary of $3,000 a year, and also represented a French china house; that he was then perfectly solvent, owed no debts and had $60,000 in cash and property, and that he did not think at that time that he owed anything to the assignors of the plaintiff; and upon this testimony plaintiff rested. This defendant was then called as a witness on his own behalf, and testified that he purchased the Mamaroneck property in 1892 from Mr. Alexander Taylor, with the understanding and agreement between them all, his wife and Mr. Taylor and his family, that he should give the property to his wife for herself and the children, as a home and residence; that the conveyance was made to the defendant Horace Craighead, and he subsequently, in October, 1892, conveyed the property to his wife; that in 1893 he conveyed the lots described in the complaint to his wife; that he was then residing with his family in Massachusetts, and was a member of the firm of Craighead & Wilcox, 33 Barclay street and 38 Park place, New York; that he was drawing as salaries between $5,000 and $6,000 a year, and had also an income derived from his mortgages; that his income from all sources was $10,000 per year; that in addition to the property which he conveyed to his wife in March, 1893, he owned some New York city bonds and mortgages, and owned western mortgages amounting to some $25,000, and that his interest in the business amounted to $5,000; that he owned real estate in New Jersey amounting to $10,000, and he had over $25,000 in cash deposited in the Union Trust Company, and between $4,000 and $5,000 with Whitehouse & Co., bankers, in Broad street; that at the time he made the conveyance he was worth $60,000, not including the value of the property conveyed to his wife, either in the twenty-third ward or in Mamaroneck, with an income of $10,000 a year; that the power of attorney which was offered in evidence was executed long before he made any conveyance to his wife, and was for the purpose of releasing his wife's right of dower in his property; that at the time he made this conveyance, in 1893, to his wife he was entirely free from debt, and he did not think he owed anything to the plaintiff's assignor at that time. The witness further testified as to his purchases and sales of stocks in March and April, 1895; that the total losses of these transactions were upwards of $17,000;

that in July, 1894, he organized the Craighead Manufacturing Company at Shelton, Connecticut; that he invested $17,000 in the company between July, 1894, and January or February, 1895; that the business then went into the hands of a receiver and he lost all the money he put in that corporation. He also testified as to some further business transactions subsequent to this conveyance in question in which he suffered large losses, and that his total losses, after such conveyance, in various enterprises with which he had been connected were about $95,000.

Independent evidence was offered to show that the defendant lost between $15,000 and $18,000 in the Connecticut corporation between July, 1894, and February, 1895, and other losses in business. There was also evidence to show that on February 27, 1893, the defendant had $35,000 on deposit in the Union Trust Company; that on March 2, 1893, his balance was upwards of $23,000. Thus, the testimony of the grantor tending to show that he was solvent at the time he made these conveyances and had a large surplus of property over and above that required to pay all his debts was corroborated by other testimony, and there was not a particle of evidence to contradict it. The court below, upon this evidence, found as a fact that the judgment debtor was not insolvent at the time he made the conveyances, and that finding is certainly sustained by the evidence. In fact there is no evidence to the contrary. From the evidence as it stood upon the former trial this court drew the inference that the grantor was scheming to rid himself of the title to his property, and that the conveyance of the lots in question was one step in carrying out that scheme; that there was a general purpose of the grantor to put his property beyond the reach of the plaintiff's claim. The additional evidence offered upon this trial, explaining as it does, in detail, the transaction entered into after the conveyance in question by which the grantor became heavily involved, and the circumstances surrounding the transfer of this property and the Mamaroneck property, were at least sufficient to present to the court below a question of fact as to the intent with which the grantor made these conveyances. Considering the situation of the grantor at the time he made these conveyances, his business prospects and the amount of property he retained in his possession, it cannot be said that the property which he transferred to his wife was more than a

reasonable provision for her and her children; and the subsequent losses in business and in his stock speculations satisfactorily accounted for his inability to pay the plaintiff's judgment.

Upon the whole case, after a careful consideration of the testimony, we think that the finding of the court that this transfer was not made with intent to hinder, delay and defraud creditors was sustained by the evidence.

The judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY and PATTERSON, JJ., concurred.

Judgment affirmed, with costs.

NOTE.— The rest of the cases of this term will be found in the next volume, 47 App. Div.— [REP.